UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Vincent Lucas,

    Plaintiff,

v.

Tricia Moore, *et al.*,

    Defendants.

Case No. 2:18-cv-582

Judge Michael H. Watson

Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Vincent Lucas ("Plaintiff"), proceeding without the assistance of counsel, brings this action under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721 et seq., against Tricia Moore ("Moore"), Marcia J. Phelps ("Phelps"), and the City of Newark, Ohio ("the City") (collectively, "Defendants").[1]  Plaintiff moved for summary judgment against Phelps, ECF No. 16, and Phelps cross-moved for summary judgment on Plaintiff's claims against her, ECF No. 22.  Moore and the City also moved for summary judgment, ECF No. 45, and Plaintiff cross-moved for summary judgment on his claims against both, ECF Nos. 48, 49.  For the following reasons, the Court **DENIES** Plaintiff's motions for summary judgment and **GRANTS** Defendants' motions for summary judgment.

Finally, Plaintiff moved for leave to amend his Complaint, ECF No. 36.  For reasons explained below, the Court **DENIES** that motion as well.

---

[1] The Court dismissed Defendant Licking County, Ohio, from this case in an Opinion and Order issued on March 21, 2019.  Op. & Order, ECF No. 32.

## I.    FACTS

On July 4, 2014, Plaintiff was charged with a minor misdemeanor traffic offense. Compl. ¶ 5, ECF No. 1. Plaintiff contested the violation, and the case went to trial. The present case stems from information about Plaintiff that was posted to the Municipal Court's public docket related to his criminal traffic case. For ease of readability, the Court discusses below the pertinent facts and the basis for Plaintiff's claims against Phelps and Moore separately.

### A. Phelps

Plaintiff's traffic ticket, as are all traffic tickets issued in Licking County, was filed with the Clerk of Court at the Licking County Municipal Court ("Municipal Court") for further processing. Phelps Aff. 1–2, ECF No. 22-2. Phelps, as Clerk of Court, then entered data from Plaintiff's traffic ticket—including his name, address, and date of birth—into the Municipal Court's case management system. That data became part of Plaintiff's online, publicly viewable case docket on the Municipal Court's website. *Id.* at 1.

The Municipal Court states that it maintains the online docket for the benefit of the public, "so a defendant can access their case file, make payments, see hearing dates, or obtain other information about the case." *Id.* Individuals may search for a case docket using an offender's name, address, date of birth, license plate number, or traffic ticket number. Ex. F., ECF No. 16-3. A vehicle's license plate number is not displayed on the public docket; but an individual's name, address, and date of birth are displayed on the public docket. Phelps Aff.

2, ECF No. 22-2; Ex. E, ECF No. 16-2. Phelps acknowledges that she, as Clerk of Court, "determines [the] information that will be accessible on the [Municipal Court's] website." Interrogatories 5, ECF No. 16-6.

Plaintiff brings this action against Phelps, alleging that by making his personal information publicly available through the Municipal Court's website, she violated the DPPA, a statute that regulates disclosure of an individual's personal information stored in a state motor vehicle record. *See generally* Compl., ECF No. 1. He seeks damages and injunctive relief against Phelps and the City of Newark as Phelps's employer. *Id.* at 7–8.

## B. Moore

Plaintiff's traffic case was prosecuted by Tricia Moore, assistant Law Director for the City of Newark. Moore Dep. 9:7–10, ECF No. 41; Lucas Dep. 26:23–24, ECF No. 44. During the course of proceedings, Plaintiff requested discovery. Compl. 2, ECF No. 1. In response, Moore produced discovery to Plaintiff and filed a copy of her discovery response with the Municipal Court. Moore Dep. 37:1–19, ECF No. 41. The discovery documents contained a one-page copy of Plaintiff's motor vehicle record setting forth Plaintiff's history of traffic violations. Pl.'s Mot. Summ. J., Ex. J. (Sealed). That record also contained Plaintiff's personal identifiers, including his Social Security Number ("SSN"), date of birth, and other personal information. *Id.* The discovery documents, including the motor vehicle record, were not filed under seal, and

Plaintiff's personal information was not redacted from the filing. Moore Dep. 35:8–9, ECF No. 41; Compl. 5, ECF No. 1.

On the day of trial, Plaintiff moved to dismiss his traffic citation, in part, because Moore, according to Plaintiff, had intentionally withheld evidence. Phelps's Cross Mot. Summ. J., Ex. C, ECF No. 22-3, PageID ## 162–68. In support of the motion Plaintiff filed a copy of the produced discovery, which contained the same unredacted copy of Plaintiff's motor vehicle record that was originally filed by Moore. Moore Dep. 93:10–94:6, ECF No. 41. The Municipal Court denied the motion to dismiss, and the case continued to trial. Ultimately, Plaintiff was convicted. *See State v. Vincent Lucas*, 14TRD0765-A (unpublished) (upheld on appeal).

Years later, Plaintiff realized that the discovery documents in his traffic case were unredacted, unsealed, and thus available to the public. Compl. 2, ECF No. 1. He found that out when he went to the Municipal Courts Clerk's Office and requested to see a copy of his complete file. Pl.'s Mot. Summ. J. 2–3, ECF No. 48. Upon receiving a copy of his file with Moore's unredacted discovery disclosure included,[2] Plaintiff commenced the present lawsuit. *Id.*

---

[2] The parties dispute whether the unredacted motor vehicle record included in the file that Plaintiff viewed at the Clerk's Office was the copy Moore filed with her discovery production or the copy that Plaintiff filed along with his motion to dismiss the traffic violation. Df.'s Mot. Summ. J. 3–4, ECF No. 45; Pl.'s Mot. Summ. J. 2–3, ECF No. 48. Construing the facts in the light most favorable to Plaintiff, as the Court must for Defendants' motion for summary judgment, the Court assumes that the copy Plaintiff viewed with his file was the copy filed by Moore.

Plaintiff contends that when Moore filed an unredacted, unsealed copy of Plaintiff's motor vehicle record with the Municipal Court, she disclosed Plaintiff's personal information to the public in violation of the DPPA. *See generally* Compl., ECF No. 1. He seeks damages and injunctive relief against Moore and the City of Newark as Moore's employer. *Id.* at 7–8.

## II. STANDARD OF REVIEW

A party is entitled to summary judgment if he or she "shows that there is no genuine dispute as to any material fact and [he or she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a summary judgment motion, the Court draws all reasonable inferences in favor of the nonmoving party and refrains from making credibility determinations or weighing the evidence. *Pittman v. Cuyahoga Cty. Dep't of Children and Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Thus, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman*, 640 F.3d at 723 (quoting *Anderson*, 477 U.S. at 251–52).

The standard of review for cross motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the

litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

Each party bears the burden of establishing that no genuine issue of material fact

exists and that it is entitled to judgment as a matter of law. The fact that one

party fails to satisfy that burden does not indicate that the opposing party is

entitled to summary judgment on its motion. Rather, courts "evaluate each

motion on its own merits and view all facts and inferences in the light most

favorable to the nonmoving party." *Hensley v. Gassman*, 693 F.3d 681, 686 (6th

Cir. 2012) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)).

### III.    ANALYSIS

The DPPA "regulates the disclosure of personal information contained in

the records of state motor vehicle departments." *Reno v. Condon*, 528 U.S. 141,

143 (2000). It prohibits a state department of motor vehicles ("DMV") from

"knowingly disclos[ing] or otherwise mak[ing] available to any person or

entity . . . personal information" or "highly restricted personal

information . . . obtained by the [DMV] in connection with a motor vehicle record,"

unless the disclosure is made for a specific purpose permitted by the statute. 18

U.S.C. § 2721(a). And the DPPA prohibits "authorized recipient[s] of personal

information" from reselling or redisclosing the information for a use not permitted

by the statute. *Id.* § 2721(c). The statute creates a private right of action against

any "person who knowingly obtains, discloses or uses personal information, from

a motor vehicle record, for a purpose not permitted" by the statute. *Id.* § 2724(a).

Under the DPPA, "personal information" is defined as any "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." *Id.* § 2725(3). "Highly restricted personal information" means "an individual's photograph or image, social security number, medical or disability information[.]" *Id.* § 2725(4).

The statute lists fourteen permissible purposes for which personal information in a motor vehicle record may be disclosed, obtained, or used. *Id.* § 2721(b). Two permissible purposes are relevant here:

> (1) For use by any governmental agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
> . . .
>
> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency . . . including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders[.]

*Id.* §§ 2721(b)(1), (4). Plaintiff bears the burden of proving that his personal information was used for an impermissible purpose under the DPPA. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008) ("In reading § 2724(a) and § 2721(b) together, we

conclude that the DPPA is silent on which party carries the burden of proof and, as such, the burden is properly upon the plaintiff.").

The Court addresses Plaintiff's claims against Phelps, Moore, and the City in turn.

### A. Phelps

As an initial matter, Phelps asserts that she is entitled to absolute quasi-judicial immunity on Plaintiff's claim against her because entering Plaintiff's personal information into the Municipal Court's case management system was part and parcel of her official duties of overseeing the Court's docket. The court agrees that it seems Phelps is entitled to "absolute quasi-judicial immunity for damages as [her] duties are related to the [Municipal C]ourt's judicial process." *Mwonyonyi v. Gieszl*, 895 F.2d 144 (Table), 1990 WL 10713, *2 (6th Cir. Feb. 9, 1990). This conclusion does not resolve Plaintiff's claim for injunctive relief,[3] however, or Plaintiff's claim for vicarious liability against the City. Accordingly, the Court addresses whether Phelps's disclosure of Plaintiff's information in fact violates the DPPA.

In a way, the Court's previous Opinion and Order on Licking County's motion to dismiss could resolve the parties' motions for summary judgment on

---

[3] The Court construes Plaintiff's request for an order enjoining the Municipal Court from disclosing his personal information on the public docket, Compl. 8, ECF No. 1, as an identical request as to Phelps, since Phelps is the Clerk of Court responsible for entering this information in the system in the first place. Plaintiff also asserts in his Response that he is bringing a claim for injunctive relief against Phelps. Resp. 12, ECF No. 25.

Plaintiff's claim against Phelps in short order. When it granted Licking County's

motion to dismiss, the Court stated that among its reasons for doing so was

Plaintiff's failure to allege that Phelps disclosed Plaintiff's personal information on

the Municipal Court's website for an impermissible purpose. Op. & Order 6, ECF

No. 32. As the Court explained in that Opinion:

> [U]nder the DPPA, personal information may be disclosed "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions[.]" 18 U.S.C. § 2721(b)(1). Further, personal information may be disclosed "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any . . . local court or agency[.]" 18 U.S.C. § 2721(b)(4). Here, Plaintiff's name, address, and date of birth were published on the summary report of Plaintiff's traffic case on the Licking County Municipal Court's website. While there could conceivably be instances where personal information is published that is not in connection with the case, that is not the case here. As a matter of common sense, a court and the public, who is entitled to open access to the courts, need to be able to identify and differentiate between potential litigants with the same name. The mere publication of a name and address in the summary report of Plaintiff's traffic case is not the type of disclosure that Congress intended to prohibit under the DPPA. *See e.g., Protecting Driver Privacy: Hearing on H.R. 3365 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary*, 103d Cong., 2d Sess., 1994 WL 212698 (1994) (statement of Congressman James P. Morgan) ("Careful consideration was given to the common uses now made of this information and great efforts were made to ensure that those uses were allowed under this bill. . . [including] for use in any civil or criminal proceeding."). The Court therefore finds that publishing Plaintiff's name and address as part of the docket heading for his traffic case is a permissible use under 18 U.S.C. §§ 2721(b)(1) and (4).

*Id.* at 6–7. Although that conclusion should be dispositive of Plaintiff's claim

against Phelps, the Court arrived at that conclusion when considering *Licking*

*County's* motion to dismiss only—Phelps did not file her own motion to dismiss.

Accordingly, it is only now, after receiving the parties' cross motions for summary judgment, that the Court may fully consider the parties' arguments in relation to Plaintiff's claim against Phelps.

After doing so, however, the Court sees no reason to revisit the conclusion reached in its previous Opinion and Order. For the reasons stated above, Phelps's disclosure of Plaintiff's personal information on the Municipal Court's website was for a permissible purpose under subsections (b)(1) and (b)(4). In addition to those reasons, as Phelps explains now, maintaining a public docket allows defendants to "access their case file, make payments, see hearing dates, or obtain information about the case." Phelps Aff., Ex. B, ¶ 9, ECF No. 22-2. Additionally, the Municipal Court makes "[a] defendant's name, address, and date of birth," but not license plate number, "viewable so that a person can verify they are viewing the docket related to their citation." *Id.* ¶¶ 10–12.

Plaintiff argues that the Municipal Court could have restricted the accessibility of the information on the public docket in various ways such as by "print[ing] a unique password on each traffic ticket" so that only the defendant would have access to the online docket. Mot. 4, ECF No. 16. But Plaintiff's arguments have to do with the "best practices" for case management—practices which the statute does not regulate. *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 606 n.12 (7th Cir. 2012) ("We . . . emphasize that we do not read 'use' [in the DPPA] to mean 'necessary use,' nor do we require the [defendant] to adopt some form of 'best practices' not commanded by the statute."). Plaintiff thus fails to

carry his burden of showing that Phelps used or disclosed his personal information for a purpose not allowed by the DPPA.

Even setting aside the purpose for the use and disclosure of Plaintiff's personal information, Plaintiff's claim would fail for another reason not addressed in the Court's previous Opinion and Order. Plaintiff's personal information, as Phelps received it, did not come from a motor vehicle record. Instead, it came from a police officer's traffic citation. Again, the DPPA prohibits the disclosure of personal information "from a motor vehicle record" for a purpose not permitted by the statute. 18 U.S.C. § 2724(a). And the statute defines a "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." *Id.* § 2725(1). Traffic citations do not pertain to documents issued by a department of motor vehicles. Therefore, they do not count as "motor vehicle records." *See Whitaker v. Appriss, Inc.*, No. 3:13-CV-826-RLM-CAN, 2014 WL 4536559, *8 (N.D. Ind. Sept. 11, 2014) ("[A] ticket, issued by [a] . . . police department, [is not] a motor vehicle record." (citing *Senne*, 695 F.3d at 602–03, 609)). When Phelps entered into the Municipal Court's case management system the information that appeared on Plaintiff's traffic citation, she did not use or disclose personal information "from a motor vehicle record." 18 U.S.C. § 2721(b).

A district court case from the Northern District of Illinois does not persuade the Court to interpret the DPPA differently. In *Pavone v. Law Offices of Anthony*

*Mancini, Ltd.*, 205 F. Supp. 3d 961, 964 (N.D. Ill. 2016), the district court held that

an attorney who sent a solicitation letter to a recently wrecked motorist could be

liable under the DPPA for using the motorist's personal information for an

impermissible purpose even if the attorney obtained that information from a crash

report on a third-party website instead of from a motor vehicle record. The court

concluded that the DPPA protects any information that *originates* from a motor

vehicle record. *Id.* ("[I]f the *original source* of the other government agency's

information is the state department of motor vehicles, the DPPA protects the

information throughout its travels." (alteration in original; emphasis added)

(quoting *Whitaker*, 2014 WL 4536559 at *4). The *Pavone* court therefore

concluded that the attorney could be liable for using the motorist's information for

an impermissible purpose if he knew that the information in the crash report

originated from the state's DMV as opposed to any other source. *Id.*

The *Pavone* court's interpretation of the statute, however, is inconsistent

with the statute's plain language. By its unambiguous terms, the DPPA governs

the "officer[s], employee[s], or contractor[s]" of state departments of motor

vehicles who "disclose or otherwise make available" personal information from a

motor vehicle record as well as the DMV's "authorized recipient[s]" of a motor

vehicle record who "resell or redisclose the [personal] information" contained

therein. 18 U.S.C. § 2721(a), (c). No statutory language brings in those who

receive personal information from a source other than a motor vehicle record.

For a non-DMV officer, employee, or contractor to fall within the DPPA's

coverage, the individual must obtain another's personal information directly "from a motor vehicle record." *Id.* § 2724(a). *See Maracich v. Spears*, 570 U.S. 48, 51 (2013) (explaining that the DPPA covers the "obtaining [of] personal information *from a state DMV*" (emphasis added)); *see also Mattivi v. Russell*, No. 01-WM-533(BNB), 2002 WL 31949898, *4 (D. Colo. Aug. 2, 2002) (dismissing a DPPA claim against a state newspaper for the release of personal information contained in a traffic citation because the DPPA only covers information contained in "records issued by a department of motor vehicles"). This interpretation is also consistent with the dual purposes behind the statute's enactment: "a growing threat from stalkers and criminals who could acquire personal information *from state DMVs*" and "the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation." *Maracich*, 570 U.S. at 57 (emphasis added).

Accordingly, the Court rejects the reasoning adopted by *Pavone* and finds that because Phelps obtained Plaintiff's personal information from a traffic citation, not a motor vehicle record, she cannot be liable under the DPPA. But even if Phelps had received Plaintiff's personal information from a motor vehicle record, there is no dispute of material fact that she used and disclosed it for a permissible purpose under 18 U.S.C. §§ 2721(b)(1) and (4). For these reasons, the Court **GRANTS** Phelps's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

## B. Moore

As an initial matter, Moore argues that she is entitled to prosecutorial immunity on Plaintiff's claim for damages against her. The Court agrees. *See Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011). But, just as with Phelps, the Court proceeds to consider the merits of Plaintiff's DPPA claim against Moore anyway, because doing so is necessary to resolve Plaintiff's claims for injunctive relief against Moore and for vicarious liability against the City.

The parties do not dispute that Moore used and disclosed Plaintiff's personal information that she obtained from a motor vehicle record. Indeed, the record clearly establishes that Plaintiff's personal information was included in the motor vehicle record contained within Moore's discovery response. Thus, Plaintiff's claim against Moore comes down to whether Moore's use and disclosure fell within one of the DPPA's permissible purposes. There is no dispute of material fact that it did.

Like Phelps, Moore used and disclosed Plaintiff's personal information for purposes permitted by 18 U.S.C. §§ (b)(1) and (b)(4): for use by a government agency in carrying out its functions, (b)(1), and for use in connection with a criminal proceeding, (b)(4). When Moore turned over the motor vehicle document containing his personal information, she did so in response to Plaintiff's discovery request. Responding to a discovery request is a necessary part of the prosecutorial functions of Moore's agency, (b)(1), and an integral component of criminal proceedings, (b)(4). Additionally, by filing the discovery

response on the docket, Moore furthered her agency's common practice of creating a record with the court in the event of a discovery dispute. Moore Dep. 42:24–25, ECF No. 41; Ex. E, ECF No. 41-6. In fact, a discovery dispute actually occurred in Plaintiff's traffic case. Df.'s Mot. Summ. J. 5–6, ECF No. 45; Pl.'s Mot. Summ. J. 10–11, ECF No. 48. Moore's discovery filing on the Municipal Court's docket created the record that aided the Judge's resolution of the parties' dispute. So docketing the discovery response further accomplished the permissible purposes of subsections (b)(1) and (b)(4)—it aided Moore's agency in carrying out its prosecutorial functions and in resolving the parties' discovery disputes during a criminal proceeding. Moore's use and disclosure of Plaintiff's personal information was thus permissible under the DPPA.

Plaintiff does not dispute that, as a general matter, it was permissible for Moore to disclose Plaintiff's personal information to him, as the defendant entitled to discovery. But Plaintiff asserts that, under the DPPA, his personal information should have been redacted from the motor vehicle record included in the docket filing or that the entire discovery response should have been filed under seal. For this position, Plaintiff relies on the Supreme Court's statement in *Maracich* that the DPPA's exceptions to the general prohibition against disclosure of personal information should be "read narrowly" in order to preserve "the DPPA's purpose of protecting an individual's right to privacy in his or her motor vehicle records." 570 U.S. at 60–61 (ellipsis omitted). Under an appropriately narrow interpretation of the (b)(1) and (b)(4) exceptions, Plaintiff asserts, Moore must be

able to demonstrate why filing his personal information on the *public* docket was necessary to further the prosecution of his case and thus justified overriding his privacy interest in his personal information. Mot. 6, ECF No. 48. Plaintiff further contends that, because Moore has not offered a good reason for the unredacted and unsealed public filing sufficient to override his privacy interest, Moore's filing violates the DPPA.

Plaintiff raises legitimate concerns regarding the protection of sensitive information in court filings. Yet those concerns do not support his overly narrow reading of the DPPA's exceptions. Under Plaintiff's interpretation of the DPPA's exceptions, a use or disclosure of personal information is never permissible if a greater range of people gain access to an individual's personal information than was absolutely necessary to achieve the purpose for which it was used or disclosed. The text of the DPPA, however, does not support that interpretation. The DPPA simply states that a "recipient of personal information . . . may resell or redisclose the information only for a use permitted under subsection (b)[.]" 18 U.S.C. § 2721(c). Subsection (b), in turn, states that disclosure of personal information is permissible when it is "[f]or use by any government agency . . . in carrying out its functions," (b)(1), or "[f]or use in connection with any . . . criminal . . . proceeding," (b)(4). The statute's text thus makes the permissibility of the use or disclosure of personal information dependent upon the overarching *purpose* for the use or disclosure, not on the potential range of people who might have access to information as a result of the use or disclosure.

As the Sixth Circuit has recognized, Congress wrote the DPPA "in a way that logically put[s] the focus on the purpose for which the information would eventually be used." *Siles v. Ascom Transp. Syst., Inc.*, 478 F. App'x 283, 291 (6th Cir. 2012) (quoting *Howard v. Criminal Info. Servs., Inc.*, 654 F.3d 887, 891 (9th Cir. 2011)). Plaintiff fails to show that Moore's permissible use and disclosure of Plaintiff's information—to respond to his discovery request and create a court record—became impermissible because the filing was unredacted and unsealed and thus became accessible to a larger group of people than was absolutely necessary.

In different settings, court have held that if a company obtains more personal information than may be necessary to further its permissible business uses, that does not invalidate the permissible use for which the information was obtained in the first place. *See, e.g., Wiles*, 478 F. App'x at 190–91 (concluding that bulk obtainment of a DMV's database for a company to verify personal information submitted by potential future customers (*i.e.*, "stockpiling" of personal information) was permissible under the DPPA's business exception). Similarly, if an individual's personal information is disclosed to a wider audience than is absolutely necessary to further a permissible use, that does not alter the fact that the use itself was permissible. *Cf. Senne v. Vill. of Palatine*, 6 F. Supp. 3d 786, 794, 797 (N.D. Ill. 2013) (finding that it was permissible, under the DPPA's law enforcement exception, to disclose personal information on a parking ticket placed on an individual's windshield when displaying that information could be

helpful to other police officers attempting to verify an offender's identity, despite the fact that the information also became publicly viewable as a result of the disclosure).

This conclusion is not inconsistent with the Supreme Court's reading of the DPPA in *Maracich*. It is true, as Plaintiff argues, that the *Maracich* Court held that the exceptions to the DPPA's general use and disclosure prohibitions must be read narrowly. *Maracich*, 570 U.S. at 60. But in that case, the Court ruled that an *entire category of uses*—an attorney's solicitation letters to potential clients—fell outside of the statute's exception allowing personal information to be used "in connection with . . . investigation in anticipation of litigation." *Id.* at 59. Here, Plaintiff does not suggest that using and disclosing personal information for discovery purposes is impermissible under the DPPA as a categorical matter. He argues instead that his personal information should have been redacted from the discovery filing. But whether Plaintiff's personal information was redacted does not alter the underlying *purpose* for which it was used and disclosed.

This is not to de-legitimize Plaintiff's concerns about how Moore handled the disclosure of sensitive personal information—particularly his social security number—in the course of Plaintiff's traffic proceeding. It may be advisable and generally good practice for prosecutors to redact highly sensitive information such as SSNs from all publicly filed records. The DPPA, however, does not impose any "best practice" requirements on the handling of sensitive personal information that is used or disclosed for a permissible purpose. *See Senne*, 695

F.3d at 606 n.12. Other state sources, applicable to all Ohio courts, do impose such "best practice" requirements. Ohio Sup. R. 1(A), 45(D)(1) ("When submitting a case document to a court or filing a case document with a clerk of court, a party to a judicial action or proceeding shall omit personal identifiers from the document."). Plaintiff asserts that Moore's public filing ran afoul of Ohio Rule of Superintendence 45(D)(1). Whether it did, however, has no bearing on whether the disclosure was permissible under the DPPA; therefore, the Court does not consider that argument here.

But in any event, the DPPA is an ineffective tool for curing Plaintiff's privacy concerns over the public filing of documents containing his personal information. It is helpful to remember that the DPPA targets only one document contained in Moore's discovery response: Plaintiff's motor vehicle record. Notably, though, Moore's discovery response contained other documents— namely, Plaintiff's traffic citation—that include much of the same personal information (*i.e.*, Plaintiff's name, address, and birth date) appearing in Plaintiff's one-page motor vehicle record targeted by this litigation. Ex. E, ECF No. 41-6 (Sealed). Plaintiff does not assert that Moore should have redacted the personal identifying information in his traffic citation. (Indeed, he cannot, since his traffic citation is not a motor vehicle record.) He argues only that Moore should have redacted the personal information in his one-page motor vehicle record. Compl. 2, ECF No. 1; Mot. Summ. J. 2–3, ECF No. 48. However, because much of Plaintiff's personal information would be easily accessible in other portions of his

public case record, that redaction would still not achieve the privacy-protection goal Plaintiff is after.

At the end of the day, there is no dispute of material fact that Moore used and disclosed Plaintiff's personal information for permissible purposes under 18 U.S.C. §§ 2721(b)(1) and (4). Accordingly, the Court **DENIES** Plaintiff's motions for summary judgment as to his claim against Moore and **GRANTS** Moore's motion for summary judgment.

## C. The City

Plaintiff also brings a DPPA claim against the City, as Phelps's and Moore's employer, under a theory of vicarious liability for Phelps's and Moore's alleged violations of the DPPA. The DPPA itself is silent as to whether vicarious liability applies to DPPA claims. No circuit court has addressed the issue, and the district courts to have done so are split. *Orduno v. Pietrzak*, No. CV 14-1393 ADM/DTS, 2017 WL 4354686, at *5 (D. Minn. Sept. 29, 2017) (collecting cases), *aff'd*, 932 F.3d 710 (8th Cir. 2019). The Court need not address whether the DPPA allows for vicarious liability, however, because there is no dispute of material fact that neither Phelps nor Moore violated the statute. Therefore, the City cannot be vicariously liable for their actions. *See, e.g.*, *Margan v. Niles*, 250 F. Supp. 2d 63, 75 (N.D.N.Y. 2003). Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment as to his claim against the City and **GRANTS** the City's motion for summary judgment.

## IV.  PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Finally, Plaintiff seeks leave to amend his Complaint.  Mot., ECF No. 36.
The motion in support of leave to amend reads more like a motion for
reconsideration of the Court's Opinion and Order dismissing Licking County from
the case than a motion for leave to amend.  First, Plaintiff raises additional
arguments regarding Congress's motivation for enacting the DPPA and whether
birth dates are included in the category of personal information that the statute
protects.  *Id.* at 1–7.  Plaintiff asserts that he wants to add allegations in the
Complaint that any person can use another's license plate numbers to look up
their personal information on the Municipal Court's website and that a date of
birth is a personal identifier.  *Id.*  Second, Plaintiff argues that Moore receives
part of her salary from Licking County and that this fact was made known to
Plaintiff only after receiving certain discovery documents from Defendants.  *Id.* at
7.  Therefore, Plaintiff asserts that Licking County is legally responsible for
Moore's actions and his Complaint should be amended to add these facts and
restore Licking County as a defendant in the case.  *Id.*

The Court denies Plaintiff's motion for leave to amend because any
amendment on these grounds would be futile.  Fed. R. Civ. P. 15(a); *Parchman
v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018).  Plaintiff's additional allegations
regarding the use of license plate numbers and birth dates have no bearing on
the Court's determination that Phelps (and thus Licking County) neither received
Plaintiff's personal information from a motor vehicle record nor used that

information for a purpose not permitted by the DPPA.  Moreover, whether Licking County may be considered legally responsible for Moore's actions is irrelevant because the Court concludes that Moore's actions did not run afoul of the DPPA.  Accordingly, Plaintiff's motion for leave to amend, ECF No. 36, is **DENIED**.

## V.   CONCLUSION

For all these reasons, the Court **DENIES** Plaintiff's motions for summary judgment, ECF Nos. 16, 48, and 49, **DENIES** Plaintiff's motion for leave to amend, ECF No. 36, and **GRANTS** Defendant's motions for summary judgment, ECF Nos. 22 and 45.  The Clerk shall enter final judgment for Defendants and terminate this case.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**